United States v. Sanford Good afternoon, your honors. May it please the court, my name is Robert Wood. I represent the appellant, Mr. Sanford. Mr. Sanford did a pro se application for compassionate release. He has been incarcerated at Raybrook Correctional Facility. His outdate is, he was sentenced originally in 2017 to a period of 156 months. He appealed his sentence, it's been before this court before, and it was affirmed. That sentence was affirmed. He's been in custody actually since June of 2015, and his projected outdate is in June of 2026. In terms of the standard the courts are required to use in determining whether he should be, whether the court should consider or grant a petition, three factors have to be satisfied, or three requirements. First, he must exhaust his administrative remedies by requesting that relief, first of all, from the prison authorities. The court below acknowledged that he had satisfied that requirement. Secondly, the court must consider the factors as of the time of the application under 3553A. And third, the petitioner must, the court must find that there are extraordinary and compelling circumstances that exist which would justify his release. And in Mr. Sanford's petition, he did establish that those circumstances did exist. Extraordinary circumstances are defined in the sentencing guidelines under 1B1.13. And they, in this case, include, they're on page four of my supplemental brief. If the caretaker of a minor child either dies or becomes incapacitated. And in this case, the caretaker, the mother of his minor child did become incapacitated. But he was cared for by his maternal aunt, and unfortunately, isn't he also- And she's also unable to care for him too. But isn't he in custody, in juvenile custody? Oh, Mr. Sanford is in custody, yes. No, his son. His son, yeah, that's the problem. Yeah, his minor child is in custody. Actually, the judge didn't know that, that that's another problem. So he wrote to his, he's trying to change that situation. But he was cared for by his maternal aunt at the time of the application? At the time that he filed all of this, his son was not in custody, or at least he was trying to arrange for not to be. Right, but he was cared for by his maternal aunt. He was a 14-year-old kid. So he had said that one of the big reasons he wanted to get out of jail was to make sure that his son did not become like him. So he wanted to be able to take care of his son. And also, he had another reason that had to do with his father, which that's another story. We're not pushing that so much in the appeal. So what are you pushing in the appeal? So what we're pushing is the son, yes. Taking care of his son? Yes. So the judge apparently missed a big portion of his application. And in this case, in his pro se application, we have a two page report from Catherine Von Sufen, which is at page 116 and 117 of the appendix. And she is a mental health counselor and a LP. And she's right on the front lines, family court, Dutchess County. She knows the boy. She's familiar with the mother. She's familiar with the aunt. And she says explicitly that the father should be released from prison in order to save his son from becoming like him. So here's what she says specifically. I have made myself aware of the details of Mr. Sanford Third, who was the person in prison, case. And understand the nature of the crimes he has been convicted of. I can only attest to the time in which I have been able to correspond with Mr. Sanford Third with regards to his character as a mental health counselor. It is my opinion that Mr. Sanford Third has a genuine interest and ability to doing everything in his power to help his son change his current life trajectory. Mr. Sanford Third's lived life experience in incarceration leads him to the greatest ability to understand his son's current criminogenic thought processes and provides him the ability to challenge those ideas in a way the rest of the individuals in James the Fourth's lives are unable. I am aware of Mr. Sanford Third has requested immediate release due to these special circumstances surrounding his son's needs in this present moment. I believe James the Fourth has the best chance of success if this request was granted and Mr. Sanford Third assumed custody upon his release. So this expert letter, which you cannot deny is an expert letter, which comes from a guy who's doing a pro se application, which is pretty good. And if I was doing this application on his behalf, I would be, as his lawyer, I would have been proud to have had this as an exhibit in my application done on his behalf. The judge doesn't even mention this letter in his decision. Well, the judge didn't mention the letter, but didn't the judge say? Pardon me? Didn't the judge? He refutes it. What he says is, I'm sorry, Judge, am I interrupting you? Well, I did have a question. Sure. But it seems like you want me to hear something. So go ahead, and I'll ask you my question. Okay. Well, the judge apparently is ignorant of the letter, because what he says is, he says, he doesn't even think the kid's in jail. He says. Well, because he wasn't in jail at the time. Well, he was not in jail. And it's not jail. It's a detention center. It's not jail. It's not jail. It's non-secure detention. It's not non-secure detention. Okay. Yeah. So he says, apparently the boy is on probation and acting up and behaving badly. That's what the decision says. So he says, whether the defendant, who is convicted of serious crimes, including disturbing or distributing dangerous drugs to minor, is truly in the best position to monitor and supervise his son is at least debatable. More to the point, this endeavor does not constitute an extraordinary reason for his release. Well, it might be debatable in the judge's opinion, but you would think if the judge had read this expert's letter, he would have said, it might be debatable, but I read this expert's letter, and I think she's won because. Or maybe the judge did read the letter and is precisely commenting that language in the judge's decision is based on having read the letter and still coming to the judge's conclusion. What do you read from that that the judge didn't read all the submissions? Because if the judge had read the letter, he would have said, I read this letter, and the boy is not on probation. The boy is in a non-secure detention facility, and his mother is unable to take care of him. Because that's what her letter says. Because his description of the boy is that he's on probation and acting badly. That's a very generalized description of the boy's situation. So, and even if the judge, it's pretty clear from reading the judge's decision that he did not see this two-page letter. Or if he did see it, he made a, the government did not refute this, by the way, in their responding papers. The government did not dispute anything that the defendant factually submitted. And I would submit that this constitutes a factual deviation from, that this would constitute a- We understand your argument, Attorney Wood. You have reserved two minutes for rebuttal, and you're well over two minutes. Very good, I appreciate it very much, Your Honor. Thank you. We will hear from Attorney Lee. Good afternoon, may it please the court. My name is Tiffany Lee, and I represent the United States. The district court here acted well within its discretion when it denied Mr. Sanford's application for a reduction in his sentence pursuant to the compassionate release provisions of section 3582C. Here, the district court did what it's been charged to do, which is to evaluate three things. One, whether or not the administrative remedies had been exhausted by Mr. Sanford. Two, whether there were extraordinary and compelling reasons to warrant a reduction. And most importantly, three, to make a determination under the section 3553A factors, which this court has stated and repeated on a couple of occasions, that serves as an alternative and independent basis to deny a motion for compassionate release. And that's what happened here. District Court Judge Larimer looked at the reasons and determined that in terms of the familial responsibilities that Mr. Sanford was asserting that he now has, that both factually and as a matter of its determination, these are the consequences that happen when someone gets convicted of a crime and is made to serve a sentence. In terms of facts, the district court determined that the facts were not compelling to rise to the level of compassionate release. But then, as I stated, more importantly, under the section 3553A factors, the district court stated this was a serious crime. Mr. Sanford was charged with both narcotics, weapons possession, and witness intimidation. And determined that in order to serve as a deterrence, it believed that its original sentence, there was nothing within the 3553A factors to consider that would warrant a reduction based on Mr. Sanford's application. To complete the record, I would note to this court that Mr. Sanford has since filed a second motion for a reduction under 3582. And in March of this year, the district court denied that application. And the bases were somewhat similar. So in terms of facts, there were no new facts that the district court noted that were being offered. So similarly, Mr. Sanford was relying on his son's circumstances and his father's caretaking abilities. Unless this court has any further questions, the government rests on its brief. Seeing none. Thank you, attorney. Thank you. Thank you both. Oh, I'm sorry. Sorry. Attorney Wood, you have two minutes for rebuttal. Thank you. I'll be brief. So I just wanted to state that the standard for the court is, the court decision is, review of the decision, the decision is discretionary and it's reviewed for abuse of discretion. And the reviewing court will reverse the decision if it's clearly erroneous, if there's a clearly erroneous assessment of the evidence. And it's our position that there was a clearly erroneous assessment of the evidence in that the court ignored the exhibit at pages 111 and 112 of the- The letter from the- The letter from- The family services- Which described the circumstances of the son. So we would request that the court reverse the decision and remand it for further proceedings. Thank you. Thank you, attorney. Thank you both. Thank you. Thank you.